**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-01200-001-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| Thomas Edward Ochoa, | |
| Defendant. | |

On January 12, 2022, Defendant Thomas Edward Ochoa filed a Motion to Dismiss, arguing that the Indictment should be dismissed because the United States Border Patrol ("USBP") agents who stopped his vehicle lacked reasonable suspicion to believe that he had committed a crime. (Doc. 26.) On February 17, 2022, Magistrate Judge Leslie A. Bowman held an evidentiary hearing on the Motion to Dismiss. (Docs. 35, 42.) On March 2, 2022, Magistrate Judge Bowman issued a Report and Recommendation ("R&R"), recommending that this Court deny the Motion to Dismiss Indictment. (Doc. 41.) Defendant filed an Objection to the R&R. (Doc. 46.) For the following reasons, the Objection will be overruled, and the R&R adopted.

**I.     Background**

On August 29, 2021, Defendant was arrested near Acorn Wash outside of Sonoita, Arizona. (Doc. 44 at 2-5.) He was charged by indictment with conspiracy to transport undocumented aliens and transportation of undocumented aliens, in violation of 8 U.S.C.

§§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), 1324(a)(1)(B)(i), and 1324(a)(1)(B)(ii). (Doc. 55.) The R&R summarizes the events leading to the arrest and indictment of Defendant as follows, based on testimony by USBP agents Deborah McElroy and Steven Hoogasian at the evidentiary hearing:[1]

> Deborah McElroy testified that she has been a USBP agent for three years, stationed in Sonoita, Arizona. On 8/29/21 she started her shift at 2:00 pm with muster, a briefing where agents are assigned their duties for the day and are provided with information from intelligence agents. On that day the agents were advised that there w[as] a group of undocumented non-citizens waiting in Acorn Wash to be picked up. That is an area that is less than a mile from the international border and is well-known for alien smuggling.
>
> Agent McElroy was in her marked Border Patrol vehicle when an F-150 truck coming westbound caught her attention. It was coming from the area of Acorn Wash. The truck looked out of place because it had aftermarket rims, extremely dark tint on the windows and old English lettering and stickers on the rear window. As Agent McElroy began to follow the truck, it slowed down and hesitated at a split in the road before it continued down FSR 227. The truck had been traveling faster than normal traffic in the area and noticeably slowed down when she pulled behind it. The driver and passenger put their arms out their windows and seemed to be trying to get Agent McElroy to pass them. It is unusual for people to slow down when she pulls out in front of or behind them because they are familiar with the area.
>
> Agent McElroy and the truck were traveling northbound on FSR 227 where there had been a trend of increased alien smuggling. She saw another Border Patrol vehicle traveling southbound on FSR 227. As it passed the truck it stopped, and Agent McElroy pulled up next to it. Agents Gerardo Delgadillo and Steve Hoogasian were in the vehicle. She asked them if they saw anything unusual about the occupants of the truck. Agent Hoogasian said the driver and passenger were Hispanic, they had tattoos, and the driver was wearing a baseball cap with a straight brim and a red t-shirt.

---

[1] Neither party objects to the R&R's recitation of the facts and circumstances leading up to Defendant's arrest.

Agent McElroy caught back up to the vehicle and called in a records check on the license plate. The license plate came back to a VW Jetta. She engaged her emergency lights and siren to initiate a vehicle stop. The driver pulled to the side and started to slow down but did not come to a full stop. She hit her horn, and the vehicle finally stopped. Once the truck stopped Agent McElroy approached the driver's side and noticed the license plate included a Z, not a 7. She called the corrected plate in and was advised that the vehicle matched the plate, and the registered owner was Thomas E. Ochoa out of Tucson. Meanwhile, the other two agents arrived, and Agent Hoogasian approached the passenger side of the truck. The driver was Thomas Ochoa.

Agent McElroy testified that in the last six to eight months she has processed at least 20 cases for alien smuggling along that route. She has not pulled over any vehicle on that route that was not smuggling aliens. Steven Hoogasian testified that he has been a supervisory USBP agent for the last five years and has been with Border Patrol at the Sonoita station for 15 years in total. That station covers the Acorn Wash area which runs into Mexico and is about 1/2 to ¾ of a mile north of the international border.

On 8/29/21 he was on duty beginning at 1:00 pm. Daily muster was at 2:00 pm. There has been a significant spike in criminal activity on the border. On 8/29/21 there were confirmed reports of a staging group in Acorn Wash waiting to be picked up, which had become a nearly everyday occurrence. On the day in question there were two other active vehicle stops that resulted in apprehensions of alien smuggling loads. There is a pattern of Acorn Wash and the surrounding canyons being used on almost a daily basis for smuggling. Forest Service Road (FSR) 61 is a common route of illegal traffic, allowing rapid movement east/west so vehicles can load in the low spots near the border and then get out of the area quickly. The road is within two miles to about a half a mile from the international border. Agents were getting three or four smuggling loads a day in the area which is nearly a 500% increase from the station's previous apprehension numbers.

> On 8/29/21 Agents Hoogasian and Delgadillo were riding together in a marked Border Patrol vehicle, driving south on FSR 227 at about 5:00 pm when they saw Agent McElroy. Agent Delgadillo was driving and Agent Hoogasian was operating the radio. Agent McElroy was driving northbound following a pickup truck. The agents heard information on the radio that caused them to head in her direction because she was working alone. She asked the agents if they could look into the truck as they drove by to provide her with additional information that might help her develop reasonable suspicion to conduct a stop.
>
> Agent Hoogasian radioed to Agent McElroy that there were two Hispanic people in the truck, and the driver was wearing a red basketball jersey and a flat-brim hat. Since it's a remote area, the agents mainly see ranchers and people who are lost. (RT 38:17-19) Hunters generally avoid the area near the border because of smuggling and dangerous traffic. The truck Agent McElroy was following had not been seen in the area before. Agent Hoogasian has met most of the locals in the area. He's met some of their ranch hands and knows generally what they look like, how they dress and the vehicles they drive. He noticed that the occupants were wearing clothing that is worn by people in the city and doesn't fit the area. Also, people in that attire cruising through that area raised suspicions because they matched the look of people apprehended in multiple other smuggling loads throughout the year.
>
> Agent Delgadillo turned the vehicle around and followed Agent McElroy. She conducted a vehicle stop by activating her lights and sirens. Agent Hoogasian thought they were in for a chase because the vehicle did not speed up or slow down. It rolled for about 20 seconds before the truck came to a stop, as if they were deciding whether to stop or run. It took the truck longer than average to stop, especially in an area where it is so easy to stop. Agent Hoogasian approached the passenger side while Agents McElroy and Delgadillo approached the driver's side.

Doc. 41 at 2-5 (internal citations omitted); *see also* Doc. 42.

. . . .

**A. Motion to Dismiss Indictment**

In his Motion to Dismiss, Defendant argues that the USBP agents who arrested him violated his Fourth Amendment right to be free from unreasonable search and seizure by stopping him without reasonable suspicion to believe he had committed a crime. (Doc. 26.) Defendant argues that the stop was unconstitutional because it was based upon a lack of information about the vehicle or its occupants, apart from their Hispanic ethnicity, in combination with the agent's own error regarding the vehicle's license plate number. (*Id*.) Defendant argues that the agent (incorrectly) profiled the vehicle based on its Phoenix registration and that there was nothing suspicious or unusual about the vehicle, its operation, or its occupants. (*Id*.)

In response, the Government argues that the stop was supported by reasonable suspicion. (Doc. 30.) The Government argues that all three USBP agents who were involved in the stop had been briefed earlier that day on the ongoing presence of illegal alien smuggling in the area and specifically the presence of undocumented individuals waiting to be picked up in Acorn Wash. (*Id*. at 6.) The area was known for alien smuggling and had been used frequently in the preceding months, with multiple apprehensions occurring on Forest Service Road 227. (*Id*. at 7.) The Government contends that the driver's behavior was suspicious in that he began driving unusually slowly once the Border Patrol vehicle was behind him. (*Id*.) The vehicle's "aftermarket" rims were a type commonly seen on vehicles used for alien smuggling and not typically seen on local vehicles in the area. (*Id*.) The agents saw that the occupants of the vehicle were two Hispanic males with several tattoos, one of whom was wearing a brimmed hat and red shirt. (*Id*.) This type of attire is not consistent with the attire typically worn by locals, who would be more likely to wear camouflage or hunting gear. (*Id*.) The Government contends that the totality of these objective facts, when considered in light of the agents' training, experience, and knowledge of alien smuggling activity, creates a basis for reasonable suspicion for the stop. (*Id*. at 7-8.)

. . . .

**B. Report and Recommendation**

Magistrate Judge Bowman's R&R recommends denying the Motion to Dismiss. (Doc. 41.) The R&R concludes that, considering the totality of the facts and circumstances leading up to Defendant's arrest, there was reasonable suspicion for USBP agents to stop the vehicle. (*Id.* at 7-8.) Specifically, the R&R finds that the agents were aware that the area around Acorn Wash was being used on "almost a daily basis" for alien smuggling. (*Id.*) Agent McElroy testified that she had apprehended two vehicles for alien smuggling earlier in her shift and had been involved in about twenty such cases in the previous six months. (*Id.*) Defendant's vehicle was within two miles of the international border when it was stopped. (*Id.*)

The R&R further finds that when Agent McElroy saw the vehicle driving from the direction of Acorn Wash, she noticed that it was driving faster than locals would typically drive down dirt roads, but that it slowed down when she began following it. (*Id.*) The driver waved his arm out the window as if indicating to the agent to pass him. (*Id.*) The vehicle had aftermarket rims, extremely dark window tint, and old English lettering on the rear window, none of which are typically seen on local vehicles. (*Id.*)

The agents saw that the two front-seat occupants were Hispanic, and that the driver was wearing a red basketball jersey and brimmed hat, and the passenger had visible tattoos on his arm and hand. (*Id.*) The passengers' appearances were not consistent with those of locals to the area, and the agents did not recognize the truck as being from the area. (*Id.*) The R&R concludes that Agent McElroy determined that she had reasonable suspicion to stop the vehicle, then called in the license plate number. (*Id.*) When she received the information that the license plate returned to a VW Jetta and not the Ford F-150 truck, she engaged her lights and siren. (*Id.*) The vehicle slowed but did not stop, even though it was traveling on a dirt road with no other traffic. (*Id.*) The agent then used her horn, and the Defendant stopped the vehicle. (*Id.*) The R&R concludes that these facts, including the vehicle's proximity to the international border, its presence in an area known for alien smuggling, the agents' knowledge that undocumented individuals

were waiting to be picked up in the area, the appearance of the driver and front-seat passenger, and the driver's suspicious behavior, including traveling faster than normal, slowing in reaction to USBP presence, attempting to get the USBP vehicle to pass, and failing to stop immediately when the USBP vehicle engaged its lights and siren, add up to create reasonable suspicion for the stop. (*Id.* at 8.)

## II. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation"). Failure to object to the findings and recommendations of the magistrate judge "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

## III. Discussion

### A. Defendant's Objection

In his Objection to Magistrate Judge Bowman's R&R, Defendant contends that (1) he was entitled to be in the National Forest where he was stopped; (2) Agent McElroy improperly considered his "race and demeanor" in deciding to stop him; and (3) the agents' opinions of Defendant's and his passenger's appearance were influenced by the agents' bias and are unsupported by the record or any physical evidence. (Doc. 46.) Defendant contends that the primary reasons for the stop were Defendant's race and Agent McElroy's mistake regarding the truck's license plate number, and that these are not appropriate reasons for a stop. (*Id.* at 4.) Defendant contends that the agents' other reasons for the stop, as stated during their testimony, were based on "assumptions rather than facts" and were not indicative of criminal activity. (*Id.* at 3-4.)

### B. Applicable Law

A law enforcement officer may make an investigatory stop of a vehicle if there is "reasonable suspicion" to believe that criminal activity "may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Terry v. Ohio*, 319 U.S. 1 (1968). The Ninth Circuit

1 Court of Appeals has defined reasonable suspicion as "a particularized and objective
2 basis for suspecting the particular person stopped of criminal activity." *United States v.*
3 *Valdes-Vega*, 783 F.3d 1074, 1078 (9th Cir. 2013) (internal citation and quotation
4 omitted).

5 Reasonable suspicion must be more than a mere "hunch," but it is a low bar and
6 does not require probable cause. *Arvizu*, 534 U.S. at 274. Reasonable suspicion requires
7 considerably less proof of wrongdoing than that required to satisfy the preponderance of
8 evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "In determining
9 whether a stop was justified by reasonable suspicion, we consider whether, in light of the
10 totality of the circumstances, the officer had a 'particularized and objective basis for
11 suspecting the particular person stopped of criminal activity.'" *United States v. Berber-*
12 *Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting *United States v. Cortez*, 449 U.S.
13 411, 417-18 (1982)).

14 The totality of the circumstances includes, but is not limited to: (1) the
15 characteristics of the area where the vehicle is encountered; (2) the vehicle's proximity to
16 the border; (3) traffic patterns and information about previous illegal border crossings in
17 the area; (4) whether certain types of vehicles are frequently used to transport contraband
18 or undocumented people; (5) erratic behavior on the part of the driver or attempts to
19 evade law enforcement; and (6) whether the vehicle is heavily loaded or has an unusual
20 number of passengers. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-885 (1972).
21 Although each factor may be subject to an innocent explanation, the United States
22 Supreme Court has precluded a divide-and-conquer analysis. *Arvizu*, 534 U.S. at 274. An
23 officer's training and experience may be considered in his or her assessment of the facts,
24 so long as inferences drawn are objectively reasonable. *Id.* at 273; *Cortez*, 449 U.S. at
25 418; *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (en banc).
26 The Supreme Court "has emphasized that even when factors considered in isolation from
27 each other are susceptible to an innocent explanation, they may collectively amount to a
28 reasonable suspicion." *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir.

2007) (quoting *Arvizu*, 534 U.S. at 274). In such cases, the Supreme Court instructs the Court "to give due weight to the factual inferences drawn by law enforcement officers." *Id.* (quoting *Cortez*, 449 U.S. at 417-18). "If the initial stop was unconstitutional, then all evidence seized as a result of the stop must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001).

### C. Analysis

Having reviewed the parties' arguments and the evidence, the Court will affirm Magistrate Judge Bowman's R&R. While Defendant's appearance was one factor contributing to Agent McElroy's decision to stop the vehicle, it was by no means the only factor. Agent McElroy also considered the area where she encountered the vehicle, her knowledge of the area and its proximity to the border, her knowledge regarding the presence of illegal alien smuggling, and the unusual driving behavior exhibited by Defendant. These factors are all relevant to the totality of the circumstances analysis under *Brignoni-Ponce*, and the Court finds that, considering the totality of the circumstances, Agent McElroy had a particularized and objective basis for suspecting Defendant of criminal activity. In particular, Defendant's unusual driving behavior, including traveling faster than normal, slowing in reaction to USBP presence, and attempting to get the USBP vehicle to pass once it was behind him despite the absence of any other vehicles nearby, created a reasonable basis for the stop. The Court finds that the totality of the circumstances supports a finding of reasonable suspicion, independent of Agent McElroy's error in reading the vehicle's license plate.

Accordingly,

**IT IS ORDERED** that Defendant's Objection (Doc. 46) is **overruled**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. 41) is **accepted and adopted in full**.

. . . .

. . . .

. . . .

- 9 -

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 26) is **denied**.

Dated this 19th day of August, 2022.

_____
Honorable Rosemary Márquez
United States District Judge